IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KEON ROSE**, | ) |
|    Plaintiff, | ) ) ) |
| v. | ) ) |
| **DONALD N. SNYDER, JR.,** **JONATHAN R. WALLS, TOM MAUE,** **STEPHEN L. JINES, BILLY J. CONWAY,** **C. HOSKIN, MARK S. COLVIS,** **ROBERT J. SIZEMORE,** **JEFFREY A. JAENKE,** **DOUGLAS W. CAMPBELL,** **JAMISON L. FRAZIER, and** **WILLIAM SPILLER,** | ) ) ) ) ) ) ) ) ) )  Civil No. **03-787-DRH** |
|    Defendants. | ) ) |

## REPORT and RECOMMENDATION

**PROUD, Magistrate Judge:**

  This Report and Recommendation is respectfully submitted to District Judge David R. Herndon pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

  Before the court is Defendants' Motion for Summary Judgment. **(Doc. 35)**. The motion is joined in by all defendants. Defendants filed a Memorandum in Support, suported by affidavits. **(Doc. 36)**. Defendants served upon the pro se plaintiff the notice required by ***Lewis v. Faulkner***, **689 F.2d 100, 102 (7th Cir. 1982)**. **(Doc. 37)**. Plaintiff filed a response, to which he attached various exhibits. **(Doc. 40)**. Defendants filed a reply. **(Doc. 41)**.

  Plaintiff is an inmate in the custody of the IDOC. He brings suit pursuant to 42 U.S.C. §1983. As construed by the Court on preliminary review, the amended complaint alleges that plaintiff is a member of the Rastafarian faith, and that he wore his hair in dreadlocks in observance of his religious faith. The IDOC has implemented a grooming policy with respect to hairstyles. He has refused to cut his dreadlocks, and, pursuant to the grooming policy, he has

1

received numerous disciplinary tickets,. As a result, he has spent over 2 years in segregation. The court construed the amended complaint **(Doc. 7)** as raising a free exercise claim under the First Amendment. **Doc. 11, p. 4.**

The amended complaint mentions equal protection, but was not construed as stating an equal protection claim on preliminary review. Any such "equal protection" claim would overlap the free exercise claim, and requires no additional analysis. A "free-exercise claim arises under the First Amendment and gains nothing by attracting additional constitutional labels. See Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (constitutional claims must be addressed under the most applicable provision)." ***Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005)**.

In his response to the motion for summary judgment, plaintiff attempts to state a claim for retaliation; he claims that the disciplinary reports were written in retaliation for exercising his first amendment rights. **See, Doc. 40, p.7**. He also claims that he was denied yard in retaliation. **Doc. 40, p.8**. He also attempts to state Eighth Amendment claims for deliberate indifference and conditions of confinement. Because those claims were raised for the first time in plaintiff's response, they are not properly before the court and will not be considered. "[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." ***Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002), citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996).**

<u>**Standard for Summary Judgment**</u>

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c);  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).** The Court must construe the evidence in the light most favorable to the nonmoving

2

party and draw all justifiable inferences in favor of that party.  **See,** *Anderson v. Liberty Lobby Inc.*, **477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986)**.

Once the moving party has produced evidence to show that it is entitled to summary judgment, the nonmoving party must affirmatively demonstrate that a genuine issue of material fact remains for trial.  *Johnson v. City of Fort Wayne*, **91 F.3d 922, 931 (7th Cir.1996).**  In responding to a summary judgment motion, the nonmoving party may not simply reiterate the allegations contained in the pleadings.  "The object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, **497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990).**

A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, **477 U.S. at 247, 106 S.Ct. at 2510**, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, **475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).**  Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence Summary judgment is not barred by the mere existence of some factual dispute.  *Anderson*, **477 U.S. at 248; see also,** *JPM Inc. v. John Deere Industrial Equipment Company*, **94 F.3d 270, 273 (7th Cir. 1996).**  Only disputes as to facts that might affect the outcome of the suit in light of the substantive law are sufficient to defeat summary judgment.  Disputes as to irrelevant or unnecessary facts do not preclude summary judgment.  *Clifton v. Schafer*, **969 F. 278, 281 (7th Cir. 1992).**

## Analysis

Although prisoners retain their First Amendment right to the free exercise of religion, prison officials may enforce policies and regulations which limit the exercise of religious practices.  "To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a

"reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." ***O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404 (1987)**. Prison regulations or policies that impinge on an inmate's First Amendment rights are valid if they are reasonably related to a legitimate penological interest. ***Shaw v. Murphy*, 532 U.S. 223, 223, 121 S. Ct. 1475, 1476 (2001)**; ***Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261 (1987).**

"[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others to merit First Amendment protection." ***Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 714, 101 S.Ct. 1425, 1429 (1981).** At the same time, prisoners' constitutional rights may be restricted by the fact of confinement and the needs of the penal institution. *See **Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125, 97 S. Ct. 2532, 2537-2538 (1977).** "A prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion." ***Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996).** "[A]n inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests. ***Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005)**. Whether other avenues remain available for the exercise of the asserted right is one of the key tests of "reasonableness." ***Turner*, 482 U.S. at 90.**

The grooming policy in issue is explained in the exhibits attached to defendants' memorandum, Doc. 36. At the relevant time, 20 Ill.Administrative Code 502.110(a) provided that "Committed persons may have any length of hair, sideburns, mustaches, or beards so long as they are kept neat and clean ***and do not create a security risk.***" (Emphasis added.) On February 1, 2002, Jonathan Walls, who was then the warden of Menard, issued a procedural bulletin which authorized an "individual grooming policy." The procedural bulletin stated that an "individual grooming requirement" may be imposed on inmates who wear hairstyles which "create a risk

4

that contraband hidden in the hair cannot be detected or that impede searches for contraband or that pose a risk that contraband hidden in the hair may injure the employee(s) charged with searching the offender." **See, Walls affidavit, Doc. 36**, **Exhibit B**. The bulletin goes on to state that inmates who refuse to comply with an order to undo the hairstyle or to submit to a haircut may be disciplined, and the hairstyle may be forcibly changed. A copy of the bulletin is attached to the Walls affidavit.

On April 1, 2002, a new administrative directive, 5.03.160, concerning inmate grooming was implemented. **Walls affidavit, ¶9**. In May, 2002, Walls authorized institutional directive 05.13.160. This ID sets forth the procedure for enforcement of an individual grooming requirement for an inmate whose hairstyle had been determined to be a health, sanitation or security risk. A copy of the ID is attached to Walls' affidavit.

Together, the administrative directive and institutional directive identify the following security risks associated with certain hairstyles:

1. Hairstyle impedes or prevents staff from conducting a thorough search of the hair for contraband;

2. Contraband hidden in the hair may not be detected;

3. Contraband hidden in the hair may injure staff attempting to search the hair; and

4. Certain hairstyles signify a security threat group affiliation.

The institutional directive sets up a procedure for imposition of an individual grooming policy to an inmate. Imposition of the grooming policy requires approval of warden in consultation with the chief of operations. The procedure provides that the inmate is to be given a series of 3 orders to comply with the policy by either removing the hairstyle or voluntarily submitting to removal or cutting of his hair. If the inmate refuses to comply with an order, a disciplinary report is to be issued and the inmate is to be placed in administrative detention (segregation.) After continued refusal to comply, the warden is to order the forcible cutting of

5

the inmate's hair.

The record reflects, and plaintiff admits, that he was given a series of orders to remove his dreadlocks, which he refused. Disciplinary reports were issued, plaintiff was found guilty and punishments of segregation time, demotion to C grade, loss of good conduct credit, and loss of commissary were imposed. Ultimately, pursuant to the grooming policy, plaintiff's hair was cut on August 25, 2002. **Walls affidavit, ¶¶. 29-82.**

Portions of plaintiff's deposition are attached to **Doc. 36 as Exhibit A**. Plaintiff testified that his religion is Rastafarian. **Exhibit A, pp. 7-9.** He has taken the Nazarite vow, which requires him to refrain from cutting his hair. **Exhibit A, pp. 9-10.** Plaintiff had worn his hair in dreadlocks since 1997. He had more than 50 locks, which were as thick as a pencil. The locks hung down below his shoulders. **Exhibit A, pp. 15-16.** Various prison officials told him that dreadlocks could not be properly searched. Plaintiff admitted that the disciplinary reports concerning his hair were issued to him after he refused requests to take his hair down. He testified that his dreadlocks could not be taken out upon request, because "they ain't like you can unbraid them." Every officer named in his complaint who issued him a disciplinary report told him that dreadlocks were hard to search or couldn't be properly searched. **Exhibit A**, **pp. 20-21.**

Walls' affidavit states that inmates can hide contraband in hair, and that it is necessary for staff to be able to search inmates' hair. In order to conduct a search, staff must run fingers through the hair. It is more difficult to search dreadlocked hair because the hair is "usually quite thick and matted together." **Doc. 36, Exhibit B, ¶¶13-20.** His affidavit also states that staff members who must manually search dreadlocks, braids or similar hairstyles are exposed to being cut by material hidden in the hair, such as needles, razor blades, or shards of glass. If cut by such materials, the staff member is then faced with the possibility of exposure to diseases such as HIV, Hepatitis, or Tuberculosis. **Doc. 36, Exhibit B, ¶ 24.** Walls states that the grooming

6

policy was applied regardless of race, religion, or culture. **¶28.** Long hair that is worn in a ponytail or braids, as opposed to dreadlocks, can be taken down or loosened such that staff is able to put their hands in the hair and perform an adequate visual and tactile search. **¶19**. However, hair that is in dreadlocks is harder to search as it is usually "quite thick and matted together." **¶29.** Plaintiff has not offered anything to dispute these facts.

The grooming policy does not violate plaintiff's First Amendment right to practice his religion if is "reasonably related to legitimate penological interests." ***Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)**. In ***Reed v. Faulkner*, 842 F.2d 960 (7th Cir. 1988),** the Seventh Circuit noted that this is "not a demanding standard." ***Reed*, 842 F.2d at 962.** If the regulation "strikes a reasonable balance between the interest in religious liberty and the needs of prison safety and security, he must lose on his free exercise claim." ***Id*. at 962.**

The court considers the following four factors in balancing plaintiff's interest in religious liberty and the needs of prison safety and security: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether alternative means of exercising the constitutional right remain open to the inmate; (3) the impact accommodation of the constitutional right will have on guards and other inmates, as well as on prison resources generally; and (4) whether an alternative exists that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests. ***Turner v. Safley*, 482 U.S. at 89-92, 107 S.Ct. at 2262.**

The record establishes that the grooming policy is reasonably related to a legitimate penological interest. Walls' affidavit describes in detail the safety and security risks posed by some inmate hairstyles, including dreadlocks. Plaintiff has not disputed these risks.

It is evident that plaintiff can still practice the Rastafarian religion even with his hair cut. He was not required to take the Nazarite vow in order to be a Rastafarian. **Doc. 36, Exhibit A, p. 30.** The Nazarite vows requires abstinence from cutting of the hair, meat, dairy products, and

nicotine.  **Exhibit A, p. 10.**  Although he stated that dreadlocks are a "tenet" of the religion, **p. 8,** he also testified that there is nothing in the Rastafarian religion which says that you are no longer a member if your hair is cut.  **Exhibit A, p. 14.**  Plaintiff described abstinence from cutting one's hair as "adhering to a discipline."  **Exhibit A, p. 14**.  He still considers himself to be a Rastafarian with his hair cut.  **Exhibit A, p. 15.**

Plaintiff testified that he practices his religion by reading his Bible in the morning and at night, fasting, and eating a vegan diet.  He had his Bible while in general population and in segregation at Menard.  **Exhibit A, pp. 12-13.**  Thus, it appears that plaintiff has ample means of practicing his religion even without wearing dreadlocks.

In view of the difficulty of searching dreadlocked hair, and the possibility that staff may be cut or otherwise injured as described in defendants' affidavits, accommodating plaintiff's desire to wear dreadlocks would have a substantial impact on the prison.  No ready alternative has been suggested that would fully accommodate plaintiffs rights at *de minimis* cost to valid penological interests.  Plaintiff suggests that Menard could use the procedure which is allegedly followed at Stateville Correctional Center, that is, the inmate runs his own fingers through his hair and a hand held metal detector is waved over his head.  **Doc. 40, p.10.**  It suffices to say that this suggested procedure would not answer the security concerns documented in Walls' affidavit and discussed above.  A metal detector would not detect the presence of items such as glass, cigarettes, drugs, or money, and the warden could legitimately conclude that a policy which relies upon the inmate to search himself may not be fully effective in uncovering hidden contraband.

This Court concludes that plaintiff's First Amendment rights to practice his religion were not violated by the grooming policy at Menard Correctional Center, and defendants are entitled to summary judgment.

## Recommendation

For the foregoing reasons, this Court recommends that Defendants' Motion for Summary Judgment **(Doc. 35)** be **GRANTED**. Summary judgment should be granted in favor of Defendants Robert Sizemore, Jeffrey Jaenke, Douglas Campbell, Jamison Frazier, William Spiller, Donald N Snyder, Jr, Jonathan R Walls, Tom Maue, Stephen Jines, Billy J. Conway, Charles Hoskin, and Mark S Colvis.

If this report and recommendation is adopted in its entirety, no claims will remain pending.

**Objections to this Report and Recommendation must be filed on or before February 22, 2007**

Submitted:  February 2, 2007.

s/ Clifford J. Proud
CLIFFORD J. PROUD
UNITED STATES MAGISTRATE JUDGE

9